```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | 19 Cr. 391-5 (AT) |
| WILKIN DE LOS SANTOS, | **ORDER** |
| Defendant. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _5/20/2022_

ANALISA TORRES, District Judge:

Before the Court are Defendant's motion to suppress and motion *in limine* submitted in anticipation of the trial scheduled for June 15, 2022. Def. Mot., ECF No. 156; Def. Mem. II, ECF No. 169.[1] Defendant is charged with mail fraud, conspiracy to commit mail fraud, and aggravated identity theft, stemming from an alleged scheme that took place between 2012 and 2019, and involved using cellphone customers' personal identifying information to purchase new cellphones on their accounts, which were then sold by the conspirators. Complaint, ECF No. 1; Indictment, ECF No. 24; Def. Mem. I at 3–4,[2] ECF No. 157; Gov. Mem. I at 1–2, ECF No. 162.

Defendant asks the Court to (1) suppress statements, physical evidence, and all other fruits of his arrest on September 8, 2016 (the "2016 Arrest"), in Hood River, Oregon, for identity theft and possession of stolen cellular devices, based upon violations of his Constitutional rights; and, in the alternative, (2) preclude the Government from offering evidence of the 2016 Arrest, pursuant to Rules 403 and 404(b) of the Federal Rules of Evidence. *See generally* Def. Mot.; Def. Mem. I; Def. Mem. II. For the reasons stated below, Defendant's motion to suppress is GRANTED in part, and DENIED in part, and Defendant's motion *in limine* is DENIED.

---

[1] The motion to suppress was filed as part of Defendant's reply memorandum to his motion *in limine*. *See* Def. Mem. II.
[2] The pincites for Defendant's memoranda are to the ECF pagination.

## BACKGROUND

At the time of the 2016 Arrest, Defendant was in Hood River, Oregon. The 2016 Arrest was captured on a body camera worn by Officer Emelike Delancy. Gov. Mem. II at 1, ECF No. 173 (stating Officer-1 wore the body camera and effectuated the arrests); Delancy Aff. ¶ 3, ECF No. 173-1 (stating he effectuated the arrests). The video shows officers arriving at the cellphone store and briefly engaging with an employee of the store. Video, Gov. Mem. II, Ex. A at 0:14–0:28 (provided to the Court on a DVD). After entering the store, the officers detained and questioned an individual attempting to purchase phones. *Id.* at 0:45–2:47. This individual has been identified by the Government as CW-1, a cooperating witness. Gov. Mem. II at 1. CW-1 was using an identification card with his likeness, but when confronted by Delancy, CW-1 stated that his name was different from the name on the card, and Delancy located CW-1's true identification card in his wallet. Video at 1:20–2:15. Delancy informed CW-1 and the people working at the store that the officers were summoned to the store by another officer who alerted them to the presence of the man they were arresting. *Id.* at 1:30–1:40, 2:15–2:25. Delancy later told Defendant that an off-duty officer who had been working a case from earlier that summer involving fraudulently purchased cellphones recognized Defendant's alleged accomplice, and informed the Hood River Police Department (the "Department"). *Id.* at 15:38–15:49. However, Defendant contends that the police reports state that the Department was notified about CW-1 by an employee at the store. Def. Mem. II at 5.

After detaining CW-1 in the store, Delancy asked CW-1 which car was his. Video at 1:58–2:04. CW-1 stated it was a Nissan, *id.* at 2:03–2:07, and later reiterated that his car was a Nissan that was parked "in the back," *id.* at 5:14–5:21. As Delancy led CW-1 through the parking lot pointing out Nissans, he disavowed each of the cars. *Id.* at 5:21–5:37. When

2

Delancy pointed to the Nissan in which Defendant was sitting, which was parked at the back of the parking lot, CW-1 disavowed that car as well. *Id.* at 5:37–5:46. However, after Delancy informed Defendant that he was detained, Defendant immediately stated that CW-1, who was standing in front of him, "isn't with me." *Id.* at 6:06–6:08. In response, CW-1 told Defendant "they already knew, I don't know how," to which Defendant asked "How?" multiple times, and Delancy stated "we already knew, we've watched you guys." *Id.* at 6:03–6:20.

Defendant was then placed in handcuffs after a brief struggle with the officers. *Id.* at 6:20–6:53. Defendant was given the full *Miranda* warnings and asked to confirm that he understood it. *Id.* at 6:54–7:09. Later, Delancy asked Defendant to confirm that he was made aware of his rights, and Defendant responded in the affirmative. *Id.* at 14:00–14:03.

Defendant invoked his right to remain silent, stating "I'm not answering no more questions," nearly twenty minutes after he was first informed that he was detained and given *Miranda* warnings. *Id.* at 24:53–24:55. However, he continued to speak, explaining why he did not want to engage any more with the officers, whereupon Delancy stated "we ain't talking nothing about the case" but proceeded to ask him questions about the car and Defendant answered. *Id*. at 25:00–25:49. This questioning lasted less than a minute before Defendant invoked his right to counsel. *Id.* at 25:09–25:50. When Defendant invoked his right to counsel, *id.* at 25:47–25:53, Delancy stated "perfect, perfect" and the officers ceased questioning him, *id.* at 25:53–25:55. When Defendant continued to speak, *id.* at 26:00–26:09, Delancy stated "we don't want you to talk," *id.* at 26:07–26:08. Furthermore, Delancy later apologized for continuing to question Defendant after Defendant stated he did not want to answer any more questions, stating "we not going to ask you any kind of question having to do with any kind of

case . . . I completely apologize." *Id.* at 26:11–26:21. The remainder of the video depicts Delancy and other officers cataloging the cash on Defendant's person. *Id.* at 26:22–30:00.

## DISCUSSION

I. Motion to Suppress

Defendant contends that information related to the 2016 Arrest should be suppressed because (1) the police lacked probable cause to arrest him; and (2) he was not read *Miranda* warnings before he made certain statements. Def. Mem. II at 6.

   A. Legal Standards

      1. Probable Cause and Searches Incident to Arrest

"Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts," *Illinois v. Gates*, 462 U.S. 213, 232 (1983), and although "probable cause requires a showing that a person 'of reasonable caution' would be warranted in the belief that a crime has been committed, 'it does not demand any showing that such a belief be correct or more likely true than false,'" *United States v. Wallace*, No. 97 Cr. 975, 1998 WL 401534, at *5 (S.D.N.Y. July 17, 1998) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)); *see also United States v. Medina*, 19 F. Supp. 3d 518, 532–33 (S.D.N.Y. 2014).

Officers may also conduct searches incident to arrest without a warrant, including a search of the arrestee's car. *Riley v. California*, 573 U.S. 373, 382, 384–85 (2014).

Furthermore, there is a separate exception to the warrant requirement for searches "of a vehicle's passenger compartment 'when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 385 (quoting *Arizona v. Grant*, 556 U.S. 332, 343 (2009)).

### 2. *Miranda* Warnings

Police may not interrogate an individual who has been taken into custody without first warning the person "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). When an individual invokes the right to remain silent or the right to counsel, questioning must cease. *United States v. Collins*, 462 F.2d 792, 801–02 (2d Cir. 1972) (en banc) (*per curiam*). However, as to the right to remain silent, if the defendant makes uncoerced, spontaneous statements to officers, he waives the right anew. *United States v. Oehne,* 698 F.3d 119, 124 (2d Cir. 2012).

### B. Application[3]

### 1. Probable Cause and Searches Incident to Arrest

Defendant contends that officers lacked probable cause to arrest him and points to inconsistencies between the body camera video and the police reports. Def. Mem. II at 4–5. The Government proffers an affidavit from Delancy, who was present at the 2016 Arrest and wearing a body camera. Delancy Aff. In the affidavit, Delancy explains that the Department had been looking for a group of non-local individuals who purchased cellphones using fake identifications

---

[3] Defendant does not request an evidentiary hearing. *See generally*, Def. Mem. II. Even if he had, the Court concludes that no hearing is necessary because Defendant has failed to put forward competent evidence to create factual disputes. *See United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992). Defendant only points to the video to support his suppression motion, Def. Mem. II at 5–6, which does not support his contentions. Further, Defendant did not support his allegations with an affidavit. *See United States v. Mottley*, 130 F. App'x 508, 510 (2d Cir. 2005) (summary order).

5

earlier in the summer, and might attempt to do so again. *Id*. ¶¶ 4–5. Based on past investigative efforts, the Department knew that the individual purchasing the phones did not work alone, and that there would be at least one additional individual who was serving as a look-out. *Id.* ¶ 4.

The Court finds that, "on the basis of the totality of the circumstances . . . a person of reasonable caution" would conclude that Defendant had committed an offense. *See Patrick*, 899 F.2d at 171. Delancy, one of the officers present at the 2016 Arrest, affirms that it was known within the Department that the fraudulent cellphone purchasing scheme was run by groups of at least two individuals. Delancy Aff. ¶ 4. CW-1 was arrested after presenting a fake driver's license to purchase phones. Video at 1:20–2:15. When CW-1 was asked where his car was parked, he stated that it was a Nissan parked at the back of the parking lot. *Id.* at 2:03–2:07, 5:14–5:21. Defendant was sitting in a Nissan at the back of the parking lot. *Id.* 5:37–6:07. Furthermore, CW-1 informed Defendant that the police knew about the scheme, *id.* at 6:07–6:20, in a way that would lead a reasonable person to conclude that the two men knew each other and were working together. A person of reasonable caution would be justified in believing that CW-1 and Defendant were involved in a conspiracy to commit identity theft. *Wallace*, 1998 WL 401534, at *5. Therefore, there was probable cause for Defendant's arrest. Any differences between the video and police reports with regard to how officers were notified of CW-1's presence at the cellphone store may be explored on cross-examination.

Moreover, the search of Defendant's person was a permissible search incident to arrest, *Riley*, 573 U.S. at 382, 384–85, and the search of his car was permissible under the vehicle exception to the warrant requirement, as it was reasonable to expect evidence would be located in the vehicle because Defendant was inside the vehicle prior to his arrest, *id.* at 385.

6

2. *Miranda* Warnings

Defendant states that "[t]he audio video recordings of the entire incident do not capture or show [*Miranda*] warnings being read to" him. Def. Mem. II at 5. Having reviewed the video, the Court concludes that Defendant was given *Miranda* warnings. Video at 6:54–7:09, 14:00–14:03.

After Defendant invoked his right to remain silent, he continued to speak, and an officer continued to ask him questions. *Id.* at 24:53–25:50. This questioning lasted less than a minute before Defendant invoked his right to counsel, *see id.* at 25:09–25:50, and Defendant does not allege that any of the answers he gave in this period were inculpatory, *see generally* Def. Mem. II. Although reengagement by a defendant may permit resumption of questioning, *Oehne*, 698 F.3d at 124, here, Defendant did not reengage, but rather explained his reasoning for no longer answering questions. Delancy then restarted questioning Defendant about the car in which he was arrested. Because the right to silence must be "scrupulously honored," *Michigan v. Mosley*, 423 U.S. 96, 104 (1975), the Court shall suppress any statements Defendant made after he invoked his right to remain silent. The Court shall not suppress Defendant's statements made during his custodial interrogation up until the time when he stated that he no longer wished to answer questions, which occurred at 24:53 on the body camera video.

II. Motion *in limine*

Defendant moves to preclude the Government from introducing at trial any information with respect to the 2016 Arrest. Def. Mot.[4] Defendant argues that absent a proffer linking the 2016 Arrest to the charged offenses, the Court should not accept the Government's contention

---

[4] Although the motion is styled as a motion *in limine*, Def. Mem. I, the accompanying memorandum of law states that "the Court should not grant the Government's motion to admit these events." Def. Mem. at 6. The Court is not aware of any such motion by the Government and shall treat the motion as a request by Defendant to preclude mention of the 2016 Arrest at trial.

that the 2016 Arrest is direct evidence. Def. Mem. I at 6. Defendant also contends that information about the 2016 Arrest should be excluded under Federal Rule of Evidence 403 "because its minimal probative value is substantially outweighed by the risk of prejudice." *Id.* at 6–7. Finally, Defendant argues that the 2016 Arrest represents improper propensity evidence. *Id.* at 7. The Government counters that 2016 Arrest is direct evidence, or, in the alternative is admissible under Rule 404(b) of the Federal Rules of Evidence to prove intent, knowledge, or absence of mistake. Gov. Mem. I at 1, 7–9. The Court agrees that the 2016 Arrest is direct evidence and is admissible.

The 2016 Arrest was for identity theft, and was related to the attempted fraudulent purchase of cellphones, Def. Mem. I at 2, the same scheme outlined in the complaint in this case, *see* Complaint at 4–6, 9–10; Indictment. Further, the 2016 Arrest occurred within the time period charged in the Indictment. *See* Indictment at 1–5. Because the 2016 Arrest "arose out of the same transaction or series of transactions as the charged offense" and is "inextricably intertwined with the evidence regarding the charged offense," information related to the 2016 Arrest is direct evidence of the charged crimes. *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989) (citation omitted); *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007). And, even if the evidence was character evidence rather than direct evidence, it is still admissible because it is relevant to whether Defendant knowingly engaged in the charged conspiracy. *See* Fed. R. Evid. 404(b)(2) (stating that other bad acts are admissible if they are offered for a proper purpose, such as "intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").

Finally, the Court finds that the evidence satisfies Rule 403's balancing test because its probative value is not substantially outweighed by unfair prejudice. Fed. R. Evid. 403. The

2016 Arrest is not more sensational than the charged crimes, *see United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992), in fact, it is the same conduct. Furthermore, any possible prejudice can be resolved by a limiting instruction. *Id.*

## CONCLUSION

For the reasons stated above, Defendant's motion to suppress is GRANTED as to the statements his made after he invoked his right to remain silent, and otherwise DENIED. Defendant's motion *in limine* is DENIED.

SO ORDERED.

Dated: May 20, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge